## CORNELIUS A. BOGERT v. CORNELIUS CHRYSTIE.

1. The interest in a suit to exclude a witness must be a present, certain, and vested interest, not an interest uncertain, remote, or contingent: and the true test of such interest is, that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record can be legal evidence for or against him in some other action.

2. The justice's court or Court of Common Pleas, on an appeal, cannot

nonsuit the plaintiff after he has rested because he has failed to make out his cause of action.

3. There is no remedy on *certiorari* for wrong conclusions as to facts, where there was *some* evidence as to those facts before the court below.

This was a cause brought up by *certiorari* from the Court of Common Pleas of Passaic county, upon a judgment in an appeal from a justice's court. The facts and state of the case fully appear in the opinion of the court.

Argued before OGDEN and POTTS, Justices.  *Hopper*, for plaintiff in *certiorari*;  *Woodruff*, for defendant.

POTTS, J.  Cornelius Chrystie brought an action of trespass on the case for trover and conversion against Cornelius A. Bogert, in the court for the trial of small causes, and obtained a judgment for the sum of $75 damages, and $2.41 costs. From this judgment Bogert appealed, and the cause was thereupon tried anew in the Court of Common Pleas of the county of Passaic, and a judgment rendered in favor of Chrystie, against Bogert, for $81.60, and $2.41 for his costs below, and $4.68 for his costs on appeal. Bogert brings his *certiorari* to review this judgment.

The case, as it appears, was substantially this: One Cornelius Van Geisen was, in 1834, the sexton of the first Reformed Dutch Church of Totowa, in Paterson. While acting in that capacity, he had a hearse built, which he continued to claim as his private property until 1838, when he sold it to Chrystie, the plaintiff below, and one Snyder for $60. Previous to this sale, as Van Geisen testifies, a subscription paper was circulated among the members of the congregation, which set forth that those who subscribed were to be entitled to the use of this hearse for themselves and families, in case of death, free of charge, or at least that this was the object of the subscription. There were fifty-seven subscribers obtained, and the whole amount subscribed was about $35, of which Van Geisen received $27. He sold the hearse, in 1838, to Chrystie and Snyder, as above stated, subject to the rights the subscribers who had paid had thus acquired in it, and handed over to them the subscription paper. They gave him $60 for it, subject to these

rights, they having been appointed sextons of the church. Chrystie and Snyder had it together until 1840, when Snyder ceased to be one of the sextons, and then Chrystie bought out his interest in it, allowing him $30.

Subsequently Chrystie ceased to be sexton, and Bogert was appointed. Van Geison, Snyder, and Chrystie, it seems, always suffered the subscribers who had paid to have the use of the hearse free of charge; to others they charged fifty cents for its use.

In 1846, Bogert got the hearse of Chrystie to use at a funeral, and refused to return it on demand, whereupon Chrystie brought this suit.

There was a good deal of testimony, and somewhat conflicting, at the trial below, as to who was entitled to the possession of the hearse. Bogert insisted that the consistory of the church were the real owners, and that he took the possession and kept it as their agent, and by their authority. Chrystie, on the other hand, offered evidence to show that it had been originally procured by Van Geison, and paid for by him; that he held it as his own property, and contended that the members of the congregation who subscribed and paid acquired no right of joint proprietorship, but the mere privilege of using it free of charge in cases of death; and that he, Chrystie, having acquired the title and possession, as before mentioned, was entitled to keep the possession, at any rate until the consistory or the congregation purchased out his entire interest in it. The jury passed upon the evidence,—the question was one of fact—and we cannot upon *certiorari* weigh this evidence, or say how the facts were. The only inquiry here is, did the court below err in point of law.

The first reason assigned for reversal is, that the court below admitted Van Geison's testimony; and it is insisted that he had an interest in the event of the suit, being the original vendor of the property. The true test of the interest of a witness is, that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action; but it must be a present, certain, and vested interest, and not an interest uncertain, remote, or contingent. 1 *Greenleaf's Ev.*, § 390.

Now it is true that Van Geison was the vendor of this property; and the general rule is, that the vendor of goods, having possession and selling them as his own, is held bound in law to warrant the title to the vendee.   2 *Blackstone's Com.* 451; 2 *Kent's Com.* 478.   But this rule does not apply to the case where the vendor sells with notice to the vendee of an outstanding interest held by a third party in the property, and subject to that interest.   There is evidence in this case that Van Geison paid more than $100 for this hearse; that he sold to Chrystie and Snyder for $60; that he handed over to the purchasers the subscription paper; that the rights of the subscribers were all along recognised by both vendor and vendee; and, therefore, that there was no deception or fraud practised by Van Geison in the sale, so far as the rights of the subscribers were concerned; and Chrystie and Snyder, when they purchased of Van Geison, were his successors in the office of sextons of the church, and may be presumed to have known how the question of title stood between Van Geison and the consistory.   It is therefore, to say the least, extremely doubtful whether, if Bogert had recovered in this case, Chrystie could have had recourse to Van Geison; and in such cases the objection goes only to the credit, and not to the competency of the witness.   Besides, Van Geison sold to Chrystie and Snyder in 1838, and continued to reside in Paterson until 1845, so that the right of action against him was barred by the statute.

The next reason assigned for reversal is, that " the plaintiff having rested his case, the court below refused to nonsuit him, although he had failed to make out a legal cause of action." But waiving the question whether he had failed or not, by the 19th and 51st sections of the small cause act, *Rev. St.* 235, 244, the justice in the original suit, and the common Pleas on the appeal, are prohibited from granting a nonsuit after the merits of the cause on either side have been submitted to the jury.

The last reason necessary to notice is, that the jury in the case below rendered a verdict for too much.   This, however, is a question of fact.   There was evidence that the plaintiff had paid $60 for the hearse; that he had expended from fifteen to

twenty dollars in repairs; and that it was worth nearly $100 when Bogert took it out of Chrystie's possession in 1846. I do not see that there is error here; at any rate there is nothing for this court to act upon.

Upon the whole, I am of opinion that the judgment below should be affirmed.